IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| THOMAS ANDREW WHITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-111 |
| | ) | |
| SOUTHERN CORRECTIONAL | ) | |
| MEDICINE, LLC, d/b/a Genesys Healthcare | ) | |
| Alliance, LLC, and DYNAMIC MOBILE | ) | |
| DENTISTRY, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, currently incarcerated at Dooly State Prison, is proceeding *pro se* and *in forma pauperis* in this civil rights case, filed pursuant to 42 U.S.C. § 1983.  Before the Court are the motions for summary judgment filed by Defendant Southern Correctional Medicine, LLC, d/b/a Genesys Healthcare Alliance, LLC, ("Genesys") and Plaintiff, as well as Plaintiff's motion for entry of default judgment.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motions for summary judgment and entry of default judgment be **DENIED**, (doc. nos. 69, 72), and Genesys's motion for summary judgment be **GRANTED**, (doc. no. 55).  Furthermore, because United States District Judge Dudley H. Bowen, Jr., previously granted the motion to dismiss by Dynamic Mobile Dentistry ("DMD"), (see doc. no. 53), the Court also **REPORTS** and **RECOMMENDS** that the Clerk should enter an appropriate judgment in favor of both Genesys and DMD, and this civil action should be **CLOSED**.

## I.      Procedural Background

The Court screened Plaintiff's amended complaint and permitted him to proceed with claims for deliberate indifference to a serious medical need against Genesys and DMD, a service Genesys contracts with to provide dental care as part of its contract with the various counties to provide medical care to inmates.  (Doc. nos. 12, 16, 26-1.)  The Court dismissed Defendants S.B. Andrews and the Dodge County Jail.  (Doc. nos. 14, 17.)  Genesys filed an answer, (doc. no. 27), and DMD filed a motion to dismiss, (doc. no. 26), which Judge Bowen granted, (doc. nos. 47, 53).  Thus, only Plaintiff's claims against Genesys remain, and they are the subject of a motion for summary judgment.  (Doc. no. 55.)  Plaintiff has likewise filed his own motion for summary judgment, (doc. no. 69), as well as a motion for entry of default judgment, (doc. no. 72).  The Clerk has issued the appropriate summary judgment notices and warnings in compliance with Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam).  (See doc. nos. 56, 70.)

Upon initial review of the summary judgment briefing, the Court required Genesys to supplement the record with factual detail regarding what request, if any, the DMD dentist made to extract more than two of Plaintiff's teeth, as well as with information about Genesys's response to any such request.  (Doc. no. 76, p. 2.)  The Court also directed Genesys to provide any available clarifying information about treatment dates and notes in the medical records that had been submitted in support of its motion for summary judgment.  (Id. at 3.)  The Court also afforded Plaintiff the opportunity to respond with any additional exhibits or briefing of his own.  (Id.)  The parties responded with multiple additional filings.  (See doc. nos. 78-83.) The Court will consider the additional information as part of the summary judgment briefing but notes it will not consider Plaintiff's improper request in Plaintiff's April 23, 2024

"Declaration/Affidavit" to add DMD and dentist Richard Liipfert "back to suit."  (Doc. no. 78, p. 5.)

Dr. Liipfert was never named as a defendant, and a plaintiff may not amend the complaint via argument offered in opposition to summary judgment.  Plair v. Interactive Commc'ns Int'l, Inc., No. 23-10731, 2024 WL 1480406, at *2 (11th Cir. Apr. 5, 2024) (*per curiam*) (citing Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (*per curiam*)).  Moreover, the June 24, 2023 deadline to file amended pleadings has long since passed.  (See doc. no. 29.)  Any request for reconsideration of Judge Bowen's dismissal of DMD on September 12, 2023, (doc. no. 53), should have been directed to Judge Bowen, not buried in supplemental summary judgment briefing.  Thus, the Court turns its attention to the summary judgment briefing at hand.

In accordance with Local Rule 56.1, Genesys submitted a Statement of Undisputed Material Facts ("SUMF") in support of its summary judgment motion.  (Doc. no. 55-2.) Because Plaintiff did not file a responsive statement, the Court deems admitted all portions of Genesys's statement having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[1]  See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

---

[1]A party disputing a fact must cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(1) & (4).

Plaintiff's opposition papers do not respond to each fact in the SUMF and often contain unsworn and/or conclusory allegations, many of which are inadmissible evidence for purposes of opposing Genesys's motion for summary judgment. See Howard v. Memnon, 572 F. App'x 692, 695 (11th Cir. 2014) (*per curiam*) (explaining "[u]nsupported, conclusory allegations" . . . insufficient to withstand a motion for summary judgment); see also Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment."). Notably, however, any such deficiencies do not result in an automatic grant of summary judgment to Genesys. Instead, each movant continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (explaining movant is not absolved of burden to show entitled to judgment as a matter of law, even if non-moving party fails to comply with Federal or Local Rules for opposing summary judgment motion). Thus, the Court has reviewed the entire record "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303.

## II. Facts

Plaintiff was a pretrial detainee while housed in Dodge County Jail ("DCJ") and Laurens County Detention Center ("LCDC"). (Amd. Compl.,[2] doc. no. 12, pp. 13, 15.) As previously explained, (see doc. no. 47, p. 3), and based on undisputed documents in the record, (doc. nos. 26-1, 26-2[3]), now-dismissed DMD contracted with Genesys to provide dental services at jails in

---

[2]Pursuant to 28 U.S.C. § 1746 and under penalty of perjury, Plaintiff verified the information in his amended complaint as true and correct. (Doc. no. 12, p. 16.)

[3]The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); see also Wreal, LLC v. Amazon.com, Inc., 38 F.4th 114, 123-24 & n.5 (11th Cir. 2022) (recognizing evidence introduced at preliminary injunction hearing but not produced

Georgia where Genesys was the contracted healthcare provider.  (Doc. no. 26-1, p. 1.)   In particular, Genesys contracted to pay DMD for authorized and covered dental services in accordance with a fee schedule set by the type of dental service provided.  (Id. at 1, 3.)  Genesys's medical staff were responsible for identifying the need for dental services, submitting an email for orders regarding the need for antibiotics, and placing an inmate on the schedule for a visit to obtain a referral for dental services from DMD.  (Doc. no. 26-2, p. 1.)  "If an inmate has a broken tooth, (the tooth is split or cutting the inmate)," the nurse is to "email for orders and also schedule for the next provider visit."  (Id.)

With respect to tooth extractions, Genesys required DMD to abide by the following conditions:

> 8.) If the dentist, during the course of the exam, identifies an urgent need for more than 2 dental extractions, he/she will notify the medical staff (not the jail staff) and the nurse will contact the Corporate Office **ASAP for a verbal approval** [using provided contact information] [ . . . ]
>
> 9.) If the request is not approved for this visit, then that inmate should be placed as a priority for the next month.
>
> 10.) No more than 2 extractions per inmate will be completed at each visit unless the GENESYS provider has been informed of the additional extractions needed and the additional extractions have been verbally approved.  Any inmates requiring additional extractions that are non-urgent will be placed on the list for the next month for future treatment.

(Id. at 2) (emphasis original).

In early February of 2022, Plaintiff began to experience severe dental pain.  (Doc. no. 12, p. 12.)  In a request to the medical department at DCJ dated February 14, 2022, Plaintiff stated he had a dental emergency in the form of a broken tooth causing him "excruciating pain."  (Doc. no.

---

during subsequent discovery is part of record which a court may properly consider when ruling on summary judgment motion).

55-3, p. 28.[4])  During an assessment by a healthcare provider on February 16, Plaintiff reported having a toothache for a couple of months, (id. at 27), was assessed as having cavities and a broken/fractured tooth, (id. at 17, 27), and the disposition was a routine provider referral but not a dental referral, (id. at 17).   Rocephin IM, Amoxil, and warm saltwater rinses were prescribed at that time, and in a pattern to follow on all the medical records provided as exhibits, individuals who are not named as Defendants signed the documentation of treatment.  (See, e.g., id. at 4, 18, 39, 40.)  Notes dated February 28, 2022, show Plaintiff was seen in the Chronic Care Clinic for a mental health issue, (id. at 1, 11), with a scheduled follow up in ninety days.  (Id. at 11, 13.)  The notes from that day do not show any acknowledgment of a recent dental infection, (id. at 11), but medication records show he was prescribed ten days of ibuprofen starting that day, (id. at 37).  On March 30, 2022, Plaintiff was prescribed a five-day regimen of ibuprofen.  (Id. at 38.)

Plaintiff was next seen for non-specific tooth pain on May 5, 2022, (id. at 1), and he was prescribed to take Tylenol twice a day, for five days, (id. at 35).  Plaintiff was seen again in the Chronic Care Clinic on May 16, 2022, with complaints of constant toothaches, and three decayed teeth were noted.  (Id. at 9.)  He was again prescribed Amoxil and thirty days of ibuprofen, a dental consultation was ordered, and a ninety-day follow up was noted.  (Id. at 10, 35.)  Genesys also authorized extraction of teeth #14, #2, and #3.  (Boyd Aff, doc. no. 79-2, ¶ 6 & p. 3.)  By August 15, 2022, Plaintiff had not seen a dentist, but he was prescribed Tylenol, twice a day as needed, for ninety days.  (Doc. no. 55-3, p. 3.)  Genesys again authorized extraction of teeth #2 and #3. (Boyd Aff. ¶ 7; doc. no. 79-2, p. 4.)

---

[4]Although Plaintiff contests the completeness of the records attached to the motion for summary judgment, he does not contest the authenticity of the records provided.  Moreover, Genesys submitted the affidavit of Janet Boyd, the custodian of medical records, to establish the authenticity and completeness of the medical records submitted at doc. no. 55-3 in support of Genesys's motion for summary judgment.  (See doc. nos. 79, 79-1.)

During Plaintiff's dental assessment on August 30, 2022, Dr. Liipfert – a DMD dentist – took three x-rays and extracted teeth #3 and #13.  (Doc. no. 55-3, p. 8; doc. no. 81-1, Liipfert Aff., ¶ 4.)  According to Plaintiff, despite what the treatment notes documented, Dr. Liipfert actually determined five teeth needed to be extracted, but only two would be pulled "due to funding purposes."  (Doc. no. 12, p. 14.)  Genesys explains in its supplemental briefing that while there is a record of Genesys authorizing extraction of at least four of Plaintiff's teeth – sometimes authorizing extraction of the same tooth more than once – there is no evidence in the record a DMD dentist ever requested to extract more than two teeth during one visit.  (Boyd Aff. ¶¶ 5-9; doc. no.79-2, pp. 3-5.)  Rather, the only documentation in the record consists of the prior approval authorizations that a Genesys provider would submit to refer an inmate for an appointment with a DMD dentist, not the documentation that would be submitted by a DMD dentist to Genesys to obtain permission to extract more than the two teeth allowed per the policy at issue in this case.  (Doc. no. 79, p. 2.)

Although the record does not contain medical request forms by Plaintiff between the August 30th extractions and September 9, 2022, Plaintiff was seen by Dr. Liipfert on September 9th for a Problem Focused Exam, but the notes do not indicate what work was done.  (Doc. no. 55-3, p. 7.)  Plaintiff avers the dentist x-rayed extraction site #13 and found "a large root with a live nerve" but did not x-ray the extraction site with protruding tooth fragments because he was tired from working so long.  (Doc. no. 12, pp. 14-15.)  Plaintiff further avers that between September 9 and 15, 2022, "Nurse Tiffany" examined him, noted the pain and discomfort caused by the protruding tooth fragment, and told him had been placed on the list to see the dentist.  (Id. at 15.)

On September 20, 2022, Plaintiff submitted a sick call request to be seen as soon as possible for a broken tooth.  (Doc. no. 55-3, p. 25.)  On examination that same day, a nurse noted Plaintiff

had decayed and fractured teeth, pain and difficulty chewing, and swelling in his face; Augmentin and Motrin were prescribed.  (Id. at 3, 26.)  Plaintiff submitted three more sick calls on September 24, 25, and 26, 2022, explaining his dental issues had not been resolved, including that he had a sharp piece of tooth protruding from the August 30th extraction site causing him pain.  (Id. at 20-24.)  A medical provider at DCJ evaluated Plaintiff September 26, and upon observing not only the sharp piece of protruding tooth from the prior extraction site, but also tooth #32 broken in half, Genesys gave orders for Plaintiff "to be placed on the list for dental."  (Id. at 2, 5-6, 20.)  Genesys also approved extraction of teeth #3 and #32.  (Boyd Aff. ¶ 8; doc. no. 79-2, p 5.)

There is no evidence as to when the next visit by the dentist would be, but Plaintiff transferred to LCDC on October 6, 2022, prior to seeing the dentist.  (Doc. no. 55-3, p. 29.)  Plaintiff had been told prior to his transfer that a dentist from DMD would "probably" see him for his existing issues, as well as another shattered tooth with an exposed nerve center, on October 10, 2022. (Doc. no. 12, p. 15.)  However, as of the date Plaintiff signed his amended complaint on November 10, 2022, at LCDC, Plaintiff had not been seen by a dentist, and no representative of DMD had been to LCDC.  (Id.)  This is consistent with the lack of any treatment records from LCDC submitted as part of Plaintiff's medical records.  (See doc. no. 55-3.)  According to a change of address dated December 12, 2022, Plaintiff transferred to Georgia Diagnostic and Classification Prison approximately one month after his transfer to LCDC.  (Doc. no. 13.)

One final note about the material facts before moving on to the legal analysis.  The number of sick calls submitted has been hotly contested throughout the discovery period in this case.  (See doc. no. 62; doc. no. 67, pp. 2-3.)  Plaintiff stated in his amended complaint he submitted "roughly" fifty sick calls beginning February 10, 2022 and maintained the attached Exhibit 1 listing the dates of submission of those sick calls "shows the plaintiff diligence in seeking medical care regarding decayed, and broken teeth that caused prolonged pain and

discomfort" (Doc. no. 12, p. 14; <u>see also</u> <u>id.</u> at 16-17; doc. no. 36, p. 5.)  On the other hand, Genesys has consistently maintained it has produced all the sick calls that exist in the medical records and from the DCJ kiosk.  (<u>See, e.g.</u>, doc. nos. 58, 60-1.)

There appears to be discrepancies in both parties' prior representations.  For example, despite his adamant argument that he knows he submitted requests that have not been provided, the two handwritten lists of dates when Plaintiff asserts he submitted sick call requests do not match.  (<u>Cf.</u> doc. no. 12, p. 17 <u>with</u> doc. no. 36, p. 5.[5])  Genesys maintains the first sick call submitted since February 14, 2022 was on September 20, 2022, (SUMF ¶13), but a response to a sick call on September 23, 2022, references medical visits on September 3 and 15, 2022, (doc. no. 55-3, p. 24).  Perhaps there are ways other than submission of a sick call request to be seen in medical, but the process has not been explained to the Court.  In any event, the preceding facts are those which have can be verified in the record before the Court, and as the below analysis reveals, the exact number of sick call requests submitted, or the exact content thereof, are not determinative of the Court's analysis.

### III.   Discussion

Plaintiff alleges Genesys was deliberately indifferent to his serious medical needs because of the delay in receiving dental care and the failure to extract more than two teeth during the initial extraction by a dentist employed by DMD.  Genesys contends that none of its employees acted with deliberate indifference to Plaintiff's dental treatment, and it cannot be held liable to Plaintiff based on a theory of vicarious liability.

---

[5]For example, among other dates provided, Exhibit 1 to the amended complaint lists one sick call on February 26 and June 20, 2022.  (Doc. no. 12, p. 17.)  In a later motion to compel, Plaintiff attached another list of sick call requests "that are sick call submission[s] regarding dental" which does not list February 26 and has two submissions for June 20, 2022.  (Doc. no. 36, pp. 3, 5.)

A. **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Federal Rule of Civil Procedure 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-

59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.

**B.      Plaintiff's Motions for  Default Judgment and for Summary Judgment Should Be Denied**

**1.      Plaintiff Is Not Entitled to Default Judgment**

Plaintiff moves for entry of default judgment based on the assertion "Defendants" did not timely respond to his motion for summary judgment.  (Doc. no. 72.)  Genesys opposes the motion for default judgment, (doc. no. 73), and filed its opposition to Plaintiff's summary judgment motion on December 4, 2023, (doc. no. 71).  DMD also filed opposition to the motion for default judgment, (doc. no. 74), even though Judge Bowen dismissed it from the case on September 12, 2023, (see doc. no. 53).

By its terms, Federal Rule of Civil Procedure 55 contemplates two steps before entry of a default judgment.  First, the party seeking a default must have the Clerk enter the default by submitting an "affidavit or otherwise" showing that the defaulting party "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Thereafter, the moving party may then seek entry of a default judgment under Rule 55(b).  Under Rule 55(b)(1), the Clerk is directed to enter a default judgment upon request of the plaintiff when all of the following conditions are present: (1) the claim is for a sum certain, or for a sum that can by computation be made certain, which is supported with an affidavit showing the amount due; (2) the default is for want of appearance; and (3) the defendant is neither an infant nor an incompetent person.

As there has been no prior entry of default by the Clerk, by definition, Plaintiff is not entitled to entry of default judgment under Rule 55(b).  Moreover, a default judgment is available under Fed. R. Civ. P. 55 only when a party has failed to plead or otherwise defend as provided by the Federal Rules.  The docket reflects Genesys has not only answered

Plaintiff's claims, (doc. no. 27), but has also moved for summary judgment, (doc. no. 55). Moreover, Plaintiff bases his request on the mistaken premise that Genesys did not timely respond to his motion for summary judgment by December 5, 2023, but as pointed out by Genesys in its opposition papers, (doc. no. 73), Plaintiff was served with the response on December 4, 2023, and again with a second courtesy copy on December 28, 2023, (doc. no. 71; doc. no. 73, pp. 1-2).  Accordingly, Plaintiff's motion for entry of default judgment should be **DENIED**.  (Doc. no.  72.)

> **2.    Plaintiff Is Not Entitled to Summary Judgment Because His Motion Fails to Comply with the Local Rules and to Show There Is No Genuine Dispute as to Any Material Fact**

Plaintiff's motion for summary judgment should be denied for two reasons.[6]  First, in contravention of Local Rules 5.1 and 56.1, there is no certificate of service showing it was served on Genesys,[7] and there is no separate statement of undisputed material facts.[8]  A motion may be summarily denied for failure to comply with the Court's Local Rules.  See, e.g.,

---

[6]The Court is aware Plaintiff filed two documents at the same time, one titled "Motion for Plaintiff's Summary Judgment as well as Defendants Summary Judgements Response by Plaintiff," (doc. no. 68), and one titled "Motion for Summary Judgement," (doc. no. 69).  The Clerk docketed the first document only as a "Response" to Defendant's motion to summary judgment.  The main argument of both documents is that there was an unreasonable delay in providing needed dental treatment and the care provided while waiting for treatment from a dentist amounted to deliberate indifference.  The Court has considered the information in both documents, but will treat the first document as opposition to Defendant's summary judgment, and the second as Plaintiff's own motion for summary judgment.  Even if the Court were to consider the opposition as a motion, it, too, fails to comply with the Local Rules as described herein, and would not entitle Plaintiff to summary judgment.

[7]The Certificate of Service neither says the motion was served on Defendant nor provides a service address; rather it states that Plaintiff put his motion "in the U.S. postal mail located at Dooly State Prison on Nov. 2nd 2023."  (Doc. no. 69, p. 4.)

[8]Plaintiff has been repeatedly warned about the requirements of Local Rule 5.1 and that a motion may be summarily denied for non-compliance.  (See, e.g., doc. no. 16, p. 4; doc. no. 25, p.1; doc. no. 34, pp. 1-2; doc. no. 42, p. 4).

Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979)[9] (holding failure to comply with the Local Rules may result in summary denial of motion).

Second, Plaintiff appears to concede that he is not entitled to summary judgment when he acknowledges he does not have documents which "would in fact solidify the awareness and the repeated display of disregard for the pain and effort by the Plaintiff to obtain the relief needed. These documents will/or would have also brought to the Court's attention that the repeated denial of their existence" was an improper attempt to avoid acceptance of responsibility for the violation of Plaintiff's rights. (Doc. no. 69, p. 2). Notably, however, these arguments regarding problems obtaining discovery have been previously raised and rejected. (See doc. no. 62, pp. 2-6.) To the extent the information in Plaintiff's motion could be liberally construed as a new motion to compel, the discovery period has long-since closed, and Plaintiff has not shown good cause for re-opening long-since expired case deadlines regarding discovery.[10] See Watkins v. Regions Mortg. Inc., 555 F. App'x 922, 924 (11th Cir. 2014) (per curiam) (affirming denial of requests for discovery submitted after expiration of scheduling order deadlines); Sullivan's Admin. Manager's II, LLC v. Guarantee Ins. Co., Case No. CV 412-212, 2013 WL 12158619, at *1 (S.D. Ga. Apr. 25, 2013) (denying implicit motion to amend scheduling order occasioned by submission of untimely motion to compel); see also Fed. R. Civ. P. 16(b) (requiring courts to set deadlines for discovery and allowing modification only for good cause).

---

[9]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

[10]Moreover, as discussed herein, on April 2, 2024, the Court directed Genesys to supplement the record with additional factual detail relevant to Plaintiff's dental treatment. (See doc. no. 76.)

In addition, Plaintiff asks the Court to set pretrial hearings if his request for judgment in his favor – unsupported by any reference to case law or record evidence – does not satisfy his burden of proof at the summary judgment stage.  (Doc. no. 69, p. 2.)  Plaintiff also filed, after summary judgment briefing closed,[11] a "Demand for Jury Trial" and a request for appointment of counsel to help him at trial.  (See doc. no. 75.)  For Plaintiff to prevail on his own motion at the summary judgment stage, he must show "there is no genuine dispute as to any material fact" to establish he is entitled to judgment as a matter of law.  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  Thus, by definition, if Plaintiff is relying on the prospect of a jury trial to evaluate the merits of his case, he is not entitled to summary judgment.

For these reasons and the reasons set forth below as to why Genesys is entitled to summary judgment, Plaintiff's motion for summary judgment should be **DENIED**.  (Doc. no. 69.)

C.     **Genesys's Motion for Summary Judgment**

As explained below, Genesys is entitled to summary judgment because Genesys cannot be held vicariously liable for the acts or omissions of individuals, and there is no evidence showing a policy of custom of Genesys caused Plaintiff's injury.

1.     **Deliberate Indifference to A Serious Medical Need**

To prevail on a claim for deliberate indifference against an individual, Plaintiff must prove that:  (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was

---

[11]In his opposition to Defendant's motion for summary judgment, Plaintiff also asks to proceed to a jury trial.  (Doc. no. 63, p. 4.)

caused by a defendant's wrongful conduct.[12]  Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).  In particular, the plaintiff must first demonstrate he suffered a "objectively, sufficiently serious" deprivation.  Wade v. McDade, No. 21-14275, -F.4th-, 2024 WL 3354963, at *7 (11th Cir. July 10, 2024) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 839 (1994)).  To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

After this initial threshold question, the plaintiff also must demonstrate a defendant acted with "subjective recklessness as used in the criminal law" by showing a defendant was "actually, subjectively aware his own conduct caused a substantial risk of serious harm to the plaintiff," but even if he knew of that substantial risk, he is not liable under the Eighth Amendment "if he responded reasonably to the risk."  Id. (citing Farmer, 511 U.S. at 839, 844-45).  Mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (per curiam)

---

[12]Because Plaintiff was a pretrial detainee at the time of the events alleged in the amended complaint, his claims are technically covered by the Fourteenth Amendment, but the standards applied under the Eighth and Fourteenth Amendments are identical.  See Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

(requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim). Moreover, delayed "treatment for an obviously serious medical condition can constitute deliberate indifference when 'it is apparent that delay would detrimentally exacerbate the medical problem,' it does so, and 'the delay is medically unjustified.'" Collins v. Bates, No. 17-14559-G, 2018 WL 5090845, at *5 (11th Cir. May 10, 2018) (per curiam) (citing Taylor v. Adams, 221 F.3d 1254, 1259-60 (11th Cir. 2000)).

However, the law is well established that "[l]iability under § 1983 cannot be based on a theory of vicarious liability." [13] Ireland v. Prummel, 53 F.4th 1274, 1289 (11th Cir. 2022) (citation omitted); Roy v. Ivy, 53 F.4th 1338, 1347 (11th Cir. 2022) ("[Section] 1983 does not provide for liability under a theory of respondeat superior. . . ." (citation omitted)); Est. of Hand by & through Hand v. Fla. Dep't of Corr., No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023) (per curiam) (explaining medical provider's liability cannot be based on "a theory of respondeat superior or vicarious liability alone"). Accordingly, to prevail on his deliberate indifference claim against Genesys, Plaintiff must show Genesys "advanced 'a policy or custom' of deliberate indifference that led to the violation of [Plaintiff's] constitutional rights before satisfying the discrete elements of [his] deliberate indifference claims" as set forth above. See Ireland, 53 F.4th at 1289; Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam) (explaining essential element of § 1983 claim that must be proven for corporate contractor's liability is establishment of policy or custom resulting in alleged constitutional deprivation);

---

[13]There is no dispute Defendant is considered a state actor for the purposes of § 1983 in this instance where it provides medical services to pretrial detainees. See Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011).

see also Estate of Hand, 2023 WL 119426, at *6 (explaining imposition of § 1983 liability against corporate entity providing healthcare to prisoners requires establishing (1) a violation of constitutional rights, (2) custom or policy of corporate entity constituting deliberate indifference to that right; and (3) the policy or custom caused the violation (citing McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004))).  In the absence of a formal policy, "the plaintiff may satisfy the second element by identifying 'an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law' or a 'municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights.'"  Plowright v. Miami Dade Cnty., 102 F.4th 1358, 1370 (11th Cir. 2024).

In other words, a private entity contracting to provide medical services like Genesys "may be held liable under § 1983 if its policy or custom causes the plaintiff's injury."  Roy, 53 F.4th at 1347; Denham v. Corizon Health, Inc., 675 F. App'x 935, 940 (11th Cir. 2017) (per curiam); Massey v. Montgomery Cnty. Det. Facility, 646 F. App'x 777, 780 (11th Cir. 2016) (per curiam); see also Brown v. Bell, No. 220-CV-281, 2022 WL 779771, at *3 (M.D. Ala. Mar. 14, 2022) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  "A policy is a decision that is officially adopted by the [government entity], or created by an official of such rank that he or she could be said to be acting on behalf of the 'government entity' while '[a] custom is a practice that is so settled and permanent that it takes on the force of law.'"  Ireland, 53 F.4th at 1289 (internal quotation marks and citations omitted).  "Proof of a single incident of an unconstitutional activity is insufficient to show a custom, which must be such 'a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."  Roy, 53 F.4th at 1347 (citation omitted); Myrick v. Fulton Cnty., Ga., 69 F.4th 1277, 1299 (11th Cir. 2023) ("A single incident of a

constitutional violation is insufficient to prove a policy or custom even when the incident involves several subordinates." (citing <u>Piazza v. Jefferson Cnty.</u>, 923 F.3d 947, 951 (11th Cir. 2019))); <u>see also</u> <u>Craig v. Floyd Cnty., Ga.</u>, 643 F.3d 1306, 1311 (11th Cir. 2011) (concluding prisoner could not demonstrate private medical provider followed unconstitutional policy or custom where he "did not even present evidence that these practices had been employed by [the provider] for any other detainees"); <u>Brown</u>, 2022 WL 779771, at *3 ("To show a practice is sufficiently widespread to constitute a custom, a plaintiff ordinarily must produce evidence that the practice resulted in deficient treatment of other inmates." (citation omitted)).

### 2.   Genesys Is Entitled to Summary Judgment Because Plaintiff Cannot Establish a Policy or Custom Caused His Injury

The Court notes from the outset that regardless of the number of sick call requests submitted, the record reveals a disturbing, months-long delay in treating Plaintiff's dental issues. At a minimum, Plaintiff reported a broken tooth in early February 2022, (doc. no. 55-3, p. 28), after multiple prescriptions for antibiotics and pain killers, Plaintiff was told in early May that he would be placed on the list to see a dentist, (<u>id.</u> at 4, 39, 40). Indeed, Genesys authorized the extraction of teeth #14, #2, and #3 on May 16, 2022, (doc. no. 79-2, p. 3), but Plaintiff did not see a dentist until August 30, (doc. no. 55-3, p. 8). Even after the extraction of two teeth, Plaintiff had additional, painful dental issues – including follow-up care from the August 30th extractions – for which treatment by a dentist at best, was delayed, and at worst, put off indefinitely by virtue of location transfers. (<u>See</u> <u>id.</u> at 2, 3, 5, 6, 7, 20-24, 26, 29.)

It is well settled that under certain circumstances, the need for dental care, when combined with the impact of not receiving such care, can meet the objective component of a deliberate indifference claim. <u>See</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1243-44 (11th Cir. 2003); <u>see also</u> <u>McClain v. Danzig</u>, Case No. 2:15-cv-594-FtM-38UAM, 2019 WL 1102184, at *4

(M.D. Fla. Mar. 8, 2019) (collecting circuit court cases in support of proposition "courts have universally agreed that a dental problem of whatever nature that results in substantial pain qualifies as a serious medical need"). Notably, however, Plaintiff never named a Genesys or DMD *individual employee* as a Defendant. That is, the question before the Court is not whether there is potential liability for any individual who actually observed Plaintiff's need for dental treatment, was responsible for ensuring timely extractions based on Genesys-authorized approval, or actually provided treatment to Plaintiff. Rather, the only issue before the Court is potential liability for the corporate Defendant Genesys.

Thus, even if the Court assumes without deciding Plaintiff can establish he had a serious medical need, before delving into a particularized analysis of the specific parts of a deliberate indifference claim, the Court must first determine whether the record shows Genesys advanced a policy or custom of deliberate indifference that led to the alleged violation of Plaintiff's rights. See Ireland, 53 F.4th at 1289. In the absence of such a showing, Plaintiff's claim fails without further consideration of the "discrete requisites" of a deliberate indifference claim as set forth above, and Genesys is entitled to summary judgment. See Ireland, 53 F.4th at 1289-90; see also McClain, 2019 WL 1102184, at *3 (recognizing private entity performing function usually within a state's prerogative can be liable under § 1983, provided (1) plaintiff identifies a policy or practice of deliberate indifference leading to violation of a constitutional right, (2) policy or practice is moving force behind violation, and (3) there is "a direct causal link between the policy or custom and the alleged constitutional deprivation" (citations omitted)); Telamy v. Amor Corr. Health Serv., No. 11-62066-CIV-COHN, 2011 WL 7025955, at *4 (S.D. Fla. Dec. 9, 2011) (dismissing claim against corporation contracting with county to provide medical and dental treatment because plaintiff failed to support claim that entity "acted in accordance with a custom or policy with regard to the possible violation of any of his

constitutional rights"), *adopted by* 2012 WL 113756 (S.D. Fla. Jan. 13, 2012).

Here, the record does not show any such policy or custom, a finding that is fatal to Plaintiff's deliberate indifference claim alleged against Genesys.  See Roy, 53 F.4th at 1347; Denham, 675 F. App'x at 940; Massey, 646 F. App'x at 780.  Indeed, the only policy alleged by Plaintiff in his amended complaint is a tooth extraction policy driven by "funding purposes" that limited extractions to two teeth.  (Doc. no. 12, p. 14.)  However, as was previously decided by Judge Bowen in granting the motion to dismiss by DMD, Genesys's policy regarding tooth extraction "did not cause any constitutional injury because it contains an exception to allow for removal of more than two teeth."  (Doc. no. 53, p. 3; see also doc. no. 26-2.)  Relevant to the failure to extract more than two teeth during the August 30th visit by Dr. Liipfert from DMD, at best, Plaintiff has shown the dentist did not follow the policy to seek authorization to remove more than two teeth.

Indeed, Genesys submitted supplemental information showing it authorized the extraction of at least four teeth at the request of its own employees, some of the teeth authorized for extraction more than once.  (Boyd Aff. ¶¶ 6-8; doc. no. 79-2, pp. 3-5.)  There is no evidence a DMD dentist ever requested permission to extract additional teeth, let alone that any such request was denied.  Plaintiff's argument the supplemental information from Genesys shows the dentist was deliberately indifferent in failing to request additional extractions is inapposite.  (Doc. no. 83, p. 2.)  As explained in detail above and previously by Judge Bowen, (doc. no. 53, p. 3), Genesys cannot be held vicariously liable for an employee's decision not to invoke the exception to seek authorization to extract more than two teeth, let alone an employee of a *different* corporation who is no longer a party to the current lawsuit.

Likewise, even if Plaintiff had alleged Genesys had a custom or policy to delay all types of dental treatment based on funding concerns – which he has not done – Genesys's written

policy shows an employee is supposed to email for orders and schedule the inmate for the next dentist visit. (Doc. no. 26-2, p. 1.)   For reasons not explained in the record, the individual healthcare workers examining Plaintiff, who are *not named as parties* in this lawsuit, did not put Plaintiff on the list to see the dentist until May 16, 2022. (Doc. no. 55-3, pp. 9-10.)   There is no evidence of any Genesys policy to delay or deny dental treatment based on funding concerns.[14]   Similarly, the record shows that even after Dr. Liipfert saw Plaintiff on September 9th for a Problem Focused Exam after the August 30th extractions, when Plaintiff continued to complain about a broken tooth and a nurse observed decayed and fractured teeth on September 20th, Plaintiff was placed on the dental list less than a week later on September 26. (Id. at 2, 5, 20.)   Even then, Plaintiff transferred to LCDC on October 6, 2022, prior to seeing a dentist, and the record is silent as to why he was not seen by a DMD dentist during the approximately one month before he entered the custody of the Georgia Department of Corrections.   In any event, Genesys cannot be held liable for any failure of DMD to provide Genesys-approved treatment.

Nor is the delay experienced by Plaintiff sufficient evidence of a broader custom or policy that Genesys makes decisions based solely on reducing costs by putting off treatment, as Plaintiff presents only his single instance of allegedly wrongful conduct.   There is no evidence of the existence of a pattern of similar violations from which deliberate indifference can be inferred.   Indeed, there is no evidence of any problems with medical or dental treatment for detainees at DCJ or LCDC other than the problems alleged concerning Plaintiff.   A single occurrence of allegedly unconstitutional activity is insufficient to show a policy or custom that

---

[14]Plaintiff's argument there were no pain medications or antibiotics administered after his February 16, 2022 examination, (doc. no. 78, p. 3), is belied by the treatment notes, prescription list, and record of medication administration. (Doc. no. 55-3, pp. 4, 37, 40.) In any event, one incident of missed medication does not establish, as discussed extensively above, a custom or policy.

would result in the imposition of § 1983 liability.  Ireland, 53 F.4th at 1290; Craig, 643 F.3d at 1310 ("'Proof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." (citation omitted)); Myrick, 69 F.4th at 1299; Piazza, 923 F.3d at 951; see also Denham, 675 F. App'x at 944; Massey, 646 F. App'x at 780.  Plaintiff has neither shown a pattern of similar violations, nor has he shown Genesys's policies regarding obtaining dental treatment or extracting teeth are themselves unconstitutional.  As Plaintiff "cannot point to another occasion when an alleged policy or custom [of Genesys] contributed to or exacerbated an inmate's medical condition," he cannot meet his burden of proof.  Craig, 643 F.3d at 1311 (citations omitted).

The actions of employees – and notably individuals not named as defendants – simply cannot form the basis for imposing liability on Genesys.  While the actions of *individuals* who observed Plaintiff's dental issues and were responsible for obtaining treatment is certainly troublesome, the record does not establish *Genesys* had a policy or custom of delaying or otherwise providing constitutionally inadequate medical treatment for serious medical needs that caused Plaintiff's injury.  Nor has Plaintiff alleged such a policy beyond the two-tooth extraction policy, which as has already been established, did not cause Plaintiff's injury.  In the absence of evidence of such a policy or custom, Genesys is entitled to summary judgment. See Ireland, 53 F.4th at 1289; Roy, 53 F.4th at 1350-51.

## IV.    Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motions for summary judgment and entry of default judgment be **DENIED**, (doc. nos. 69, 72), and Genesys's motion for summary judgment be **GRANTED**, (doc. no. 55). Furthermore, because Judge Bowen previously granted the motion to dismiss by DMD, (see doc. no. 53), the Court also **REPORTS** and **RECOMMENDS** that the Clerk should enter an

appropriate judgment in favor of both Genesys and DMD, and this civil action should be **CLOSED**.

SO REPORTED and RECOMMENDED this 18th day of July, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA